UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEFF BENN, | |
| Plaintiff, | |
| v. | Cause No. 3:23-CV-757-PPS-JEM |
| JOHN GALIPEAU, *et al.*, | |
| Defendants. | |

## **OPINION AND ORDER**

Jeff Benn, a prisoner without a lawyer, filed a second amended complaint against seven separate defendants. [DE 13.] "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Benn alleges that the Westville Correctional Facility is condemned, and the structure is collapsing around him. He claims the facility is overrun with mice, rats, bugs, and black mold, and he has been subjected to these conditions since December 20, 2022. He also alleges that there is asbestos, and the water is rusty. He claims he suffers from Chronic Obstructive Pulmonary Disorder (COPD) and neurological problems, and conditions at the prison pose a danger to him due to his medical diagnosis.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834.

> As the Seventh Circuit has explained:
>
> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference."). The fact that a government official knows of an alleged wrong does not automatically mean he or she is liable for failing to intervene.

*Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Prison officials who had actual knowledge of a substantial risk to a prisoner's health or safety may avoid liability if they responded reasonably even if the harm was not ultimately diverted. *Farmer*, 511 U.S at 844; see also *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

While Benn's concern about drinking rusty water is understandable, "[t]here are no recognized side effects of drinking rusty water." https://www.reference.com/health/side-effects-drinking-rusty-water-728e5297a7bda2ed (last visited May 28, 2024). "There are no enforceable federal limits on the amount of rust in drinking water." *Id.* Therefore, it is not plausible to infer that any defendant knew Benn was at serious risk of being harmed from rusty water and decided not to do anything to prevent that harm.

As for the remaining conditions, other than noting they are prevalent, Benn provides little detail about his experiences with mice, rats, bugs, mold, or asbestos. Prolonged exposure to infestations can amount to an Eighth Amendment violation. *See Davis v. Williams*, 216 F. Supp. 3d 900, 907-08 (N.D. Ill. 2016). Benn, however, provides almost no information about the mice, rats, bugs, mold, and asbestos or how they impacted him. He merely states that the prison was overrun with mice, rats, bugs, mold, and asbestos, speculates that these conditions pose a risk to his health as someone with COPD and a neurological disorder, and asserts that his medical conditions have worsened while at the prison. He does not allege that any medical provider has indicated that his COPD or neurological problems were caused or aggravated by these conditions.

Benn has sued Health Service Administrator Nichole Bridegroom, Dr. James Jackson, Dr. Andrew Liaw, Nurse Riley, Nurse Barlow, and Nurse Kelly. He claims that each of these individuals knew about the mice, rats, bugs, mold, and asbestos, but failed to correct the situation. "Public officials do not have a free-floating obligation to put things to rights . . . . [N]o prisoner is entitled to insist that one employee do another's job." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Solving the prison's problems with mice, rats, bugs, mold, and asbestos falls far outside the job descriptions of the nurses and doctors treating Benn's medical conditions. Therefore, he cannot proceed against any of the medical defendants for failing to correct problems with the conditions at the institution.

Benn also alleges that the medical defendants each denied him constitutionally adequate medical treatment. Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Benn claims Bridegroom denied him a breathing treatment on December 20, 2022. He does not provide any further details, and these allegations do not permit a plausible inference that Bridegroom was deliberately indifferent to any of Benn's serious medical needs. Therefore, I will not permit him to proceed against Bridegroom.

Benn also claims Dr. Jackson did not treat his conditions properly. Benn, however, does not describe the treatment he received or why he believes it was deficient. His allegations are far too vague to state a claim. Therefore, I cannot permit Benn to proceed against Dr. Jackson.

Benn further alleges that, when he complained to Dr. Jackson about the conditions at the prison, Dr. Jackson told Benn not to get locked up and he wouldn't have to deal with these conditions. Benn thinks that Dr. Jackson's comment violated his rights. While the comment shows a lack of empathy, it does not rise to the level of a constitutional violation.

Benn also alleges that Dr. Liaw is aware of Benn's neurological condition and that he receives no pain medication. Once again, Benn provides no details regarding the medical treatment he received or why he believes it was inadequate. Therefore, I cannot permit Benn to proceed against Dr. Liaw.

Benn has sued Nurse Riley too. Nurse Riley oversaw sick call. Benn filled out a health care request form asking to be seen for spinal nerve damage, degenerative lumbar disease, and arthritis on December 20, 2022. He wasn't seen until January 26, 2023. It cannot be plausibly inferred that the delay was the result of deliberate indifference. Non-inmates, too, wait weeks or months to see physicians about their

5

medical concerns. At some point in time (it is unclear when), he told Nurse Riley that a medication substituted for Neurontin wasn't working for him. It is unclear how she responded to this information. Therefore, I cannot permit Benn to proceed against Nurse Riley.

Benn is also suing Nurse Barlow. Benn says that Nurse Barlow is aware of his many chronic illnesses. At some unspecified point in time, she refused to refill any of his meds or set him up with an appointment to see the doctor even though she knew he was in pain. These allegations are insufficient for me to permit Benn to proceed against Nurse Barlow.

Benn has also sued Nurse Kelly. Nurse Kelly handles all sick care forms, screens them, and sees offenders for their chronic conditions. Benn claims he has not received adequate treatment for his severe pain related to a spinal condition. He also claims he has written numerous health care requests to "correct the delays" and she won't push those requests through so he can see a doctor about his COPD. These allegations are likewise too vague to state a claim, and I cannot permit him to proceed against Nurse Kelly.

Finally, Benn has sued John Galipeau because he is in charge of the prison and because he allegedly would not hear Benn's complaints. As Warden, Galipeau was likely aware of at least some of the problems Benn has outlined; but knowing that there are ongoing issues with mice, rats, bugs, mold, or asbestos is not enough to result in liability. Benn says Warden Galipeau would not hear his complaints, but he does not indicate how he attempted to communicate his concerns to Warden Galipeau. It is

unclear if Warden Galipeau even knew that Benn believed these conditions had aggravated his symptoms and posed a substantial risk to his health due to his COPD and neurological condition. There are no facts included in the amended complaint that permit a plausible inference that Warden Galipeau was deliberately indifferent to either the conditions Benn complains about or their impact on Benn's health due to COPD and a neurological condition. Therefore, I cannot permit Benn to proceed against Warden Galipeau.

While Benn cannot proceed against any of the defendants in their individual capacities for monetary damages, I will permit him to proceed on a conditions of confinement claim against the current Warden of the Westville Correctional Facility in his official capacity for permanent injunctive relief. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("[T]he warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out."). However, the facts in Benn's amended complaint do not suggest that he will suffer irreparable harm in the absence of a preliminary injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

For these reasons, the Court:

(1) **DENIES** the request for a preliminary injunction contained in the amended complaint [DE 13];

(2) **DIRECTS** the Clerk to add the Warden of the Westville Correctional Facility in his official capacity;

(3) **GRANTS** Jeff Benn leave to proceed against the Warden of the Westville Correctional Facility in his official capacity for permanent injunctive relief to remedy the mouse, rat, and bug infestations, mold, and asbestos to the extent that they are aggravating his COPD or neurological condition, as required by the Eighth Amendment;

(4) **DISMISSES** all other claims;

(5) **DISMISSES** John Galipeau, Nicole Bridegroom, James Jackson, Andrew Liaw, Nurse Riley, Nurse Barlow, and Nurse Kelly;

(6) **DIRECTS** the Clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of the Westville Correctional Facility at the Indiana Department of Correction, with a copy of this order and the complaint [DE 13]; and

(7) **ORDERS**, under 42 U.S.C. § 1997e(g)(2), the Warden of the Westville Correctional Facility in his official capacity to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED** on May 30, 2024.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT